**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

**UNITED STATES OF AMERICA )**
**) CAUSE NO.: 3:25-CR-00097-CCB-SJF-1**
**vs )**
**) NOVEMBER 13, 2025**
**) SOUTH BEND, IN**
**ALEXANDER JAKEWAY, )**
**)**
**DEFENDANT. )**

**FTR TRANSCRIPT OF ARRAIGNMENT/DETENTION HEARING**
**BEFORE THE HONORABLE SCOTT J. FRANKEL**
**UNITED STATES DISTRICT COURT MAGISTRATE JUDGE**

**APPEARANCES:**

**For the Government:** **JEROME W. MCKEEVER**
Assistant United States Attorney
M01 Federal Building
204 South Main Street
South Bend, Indiana 46601

**For the Defendant:** **GEORGE E. HORN, JR.**
Barnes & Thornburg LLP
201 South Main Street
Suite 400
South Bend, Indiana 46601

**Also Present:** **Cameron Wilbur**

Produced from Digital Recording

(The following proceedings were produced from the FTR electronic recording as follows:)

**DEPUTY CLERK:** This court is now in session. The Honorable Scott J. Frankel presiding.

**THE COURT:** Please be seated.

**DEPUTY CLERK:** This is 3:25-cr-97, *United States v. Alexander Jakeway.*

Will the attorneys please state their appearance for the record.

**MR. McKEEVER:** Jerry McKeever for the United States.

**THE COURT:** Good afternoon.

**MR. HORN:** George Horn for the defendant, Your Honor. Good afternoon.

**THE COURT:** Good afternoon.

Okay. We're going to have an arraignment and a detention hearing today.

The government is still seeking detention?

**MR. McKEEVER:** Yes, Your Honor.

**THE COURT:** Okay. So we're going to start with the arraignment, and today's date is November 13, 2025. The indictment was filed in this case on November 12, 2025, and the initial appearance was held on November 10th, 2025.

Mr. Jakeway, we're going to have a lot of questions for you. So if you could rise and raise your right hand and direct your attention to my courtroom deputy, we're going to

place you under oath.

(Oath administered.)

**THE DEFENDANT:** I do.

**THE COURT:** Are you Alexander Jakeway?

**THE DEFENDANT:** Yes, your Honor.

**THE COURT:** Am I pronouncing that right?

**THE DEFENDANT:** You are. Yes, you are.

**THE COURT:** Okay. And you spell your name A-L-E-X-A-N-D-E-R, J-A-K-E-W-A-Y?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** What's your date of birth?

**THE DEFENDANT:** July 9, 1990.

**THE COURT:** What's your -- where do you live?

**THE DEFENDANT:** In Valparaiso, Indiana.

**THE COURT:** Is English your primary language?

**THE DEFENDANT:** Yes.

**THE COURT:** Are you a citizen of the United States?

**THE DEFENDANT:** I am, yes, Your Honor.

**THE COURT:** Have you placed any alcoholic beverages, legal drugs, or illegal drugs into your body that would affect your ability to understand these proceedings?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** Do you have any physical or mental conditions that might make it difficult for you to understand these court proceedings and participate in them?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** During the hearing, you have the right to remain silent. You're not required to say anything at all if you don't want. The hearing is being recorded. Anything you say during the hearing can and would be used against you later by the government, if possible.

It's my recommendation, in fact strong suggestion, that you not say anything to me that would either incriminate you or cause you a problem, and you can consult with Mr. Horn before answering any question or making any statement.

On that point, if you're asked a question that you think the answer may incriminate you or cause you a problem, you may refuse to answer the question. That's fine with me. I understand why that happens in these types of hearings.

Do you understand the information about your right to remain silent?

**THE DEFENDANT:** Yes, Your Honor. Thank you.

**THE COURT:** In addition to your right to remain silent, you have the right to be represented by counsel at every stage of a criminal proceeding. And if you cannot afford an attorney, one will be appointed for you. You have the right to hire counsel should you wish. If at any time you find yourself in this case without counsel and without the ability to hire counsel, you can reach out to the Court and ask us to appoint an attorney.

Do you understand your right to counsel?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Will George Horn be representing you in this hearing?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** You may at any time during the hearing speak privately with Mr. Horn without me or anyone else in the courtroom listening to your attorney-client conversation, but you'll need to silence the microphone by pushing the button and turning off the green light, which will stop the amplification and recording of your conversation.

Do you understand that?

**THE DEFENDANT:** Yes, I do, Your Honor.

**THE COURT:** If you speak quietly enough, we really won't be able to hear you. I know it's tight confines in here, but you can have an attorney-client conversation at that table so long as the microphones are turned off. Okay?

**THE DEFENDANT:** Yes.

**THE COURT:** Okay. Mr. Jakeway, this hearing, as I said, is called the arraignment. You've been charged with violating federal criminal law. The purpose of the arraignment hearing is to make sure you understand the charges against you in the indictment, make sure you understand the maximum possible penalties you face if convicted, and have you enter a plea to the charges.

Do you understand the purposes of the arraignment?

**THE DEFENDANT:** Yes, I do, Your Honor.

**THE COURT:** The charges against you are contained in a document called the indictment. It's actually just a one-count indictment. And in that document, the United States Government is saying you've committed a crime.

Have you received a written copy of the indictment?

**THE DEFENDANT:** Yes, I have, Your Honor.

**THE COURT:** Have you read it?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Have you talked about the indictment with your attorney?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Do you waive formal reading of the indictment and further advisement of penalties?

**MR. HORN:** Your Honor, we do. I have advised my client. They are the same as the ones we went over the other day in court, and they are the same as well, and he waives formal reading at this time.

**THE COURT:** Okay. Mr. McKeever, as we just got a preview, do the charges in the indictment differ in any way from the original charges in the complaint?

**MR. McKEEVER:** No, your Honor. It's still one charge under Title 18, United States Code, Section 875(c).

**THE COURT:** Okay. At the initial appearance hearing,

which we held on Zoom on November 10th, 2025, we discussed the charge against you in the case. At the initial appearance hearing, we also discussed the maximum possible penalties that you face if convicted.

Do you remember the information about the charge and the penalties?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Do you remember the information about the maximum possible penalty you face if you're convicted?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Would you like any of that information repeated again?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** Okay. Do you have any questions you'd like to ask me about the charges or penalties at this time?

**THE DEFENDANT:** No, thank you, Your Honor.

**THE COURT:** Now that we've discussed the charge and the possible penalties, I'm ready for you to enter a plea. I'm actually going to ask your attorney to enter the plea on your behalf.

So how does your client plead with regard to the one-count indictment dated November 12, 2025? Guilty or not guilty?

**MR. HORN:** Not guilty, Your Honor.

**THE COURT:** The defendant, Alexander Jakeway, has

entered a formal plea of not guilty. The matter will need to be set for trial and pretrial proceedings.

The case has been assigned to Judge Brisco, and she has given me a date of a motion deadline for December 11th, 2025. Let's see here. The final pretrial conference is going to be January 6, 2026, at 9:30 a.m., and the jury trial, January 21st, 2026, at 9:00 a.m. So those are the dates.

Mr. McKeever, what is the best estimate of the length of trial if the case goes to trial?

**MR. McKEEVER:** Two days, Your Honor.

**THE COURT:** I will issue a written order containing the trial date and other deadlines along with the estimated length of trial. Pursuant to the Federal Due Process Act, the government is reminded of its obligation to provide *Brady* material to the defense on a timely basis.

I've reviewed the dates set by Judge Brisco for the trial and determined that she has set it within the requirements of the Federal Speedy Trial Act so, therefore, no ends-of-justice finding is necessary.

Any plea agreement must be filed no later than five business days prior to the first day of trial, and any extensions of any deadlines must be requested in a written motion before Judge Brisco.

So with regard to detention, the government had just advised us that they're seeking detention.

And is the defense seeking a detention hearing still?

**MR. HORN:** Yes, Your Honor, we are.

**THE COURT:** Mr. Jakeway, there may be some questions in this hearing as well, but you're still under oath.

Do you understand that?

**THE DEFENDANT:** Yes, I do, Your Honor.

**THE COURT:** Mr. Jakeway, let me just make sure, you told us that English is your primary language; correct?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** And you're a citizen of the United States?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** And you haven't put any alcoholic beverages, legal drugs, or illegal drugs into your body either yesterday or today; is that correct?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** Okay. I just want to remind you -- I'm not going to go into the details -- that you also have the right to remain silent during this hearing. You don't have to answer any of my questions if you don't want to; and if you don't want to answer something, just tell me that. That's fine with me. That happens in these hearings. But there may be some questions for you as we work through the detention issue.

Do you understand that?

**THE DEFENDANT:** Yes, I do, Your Honor.

**THE COURT:** And I just also want to remind you that you have a right to talk to Mr. Horn at any time during this hearing, and you can do so privately just by silencing the microphone in front of you.

Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Okay. At the detention hearing, the Court will determine whether any condition or combination of conditions will reasonably assure your appearance in court as required and assure the safety of any other person and the safety of the community. So there are two components to it: Will you appear in court and will you be a danger or a risk to the community if you're released?

Let's see. In making the assessment, the Court must consider the factors set out in a federal statute. It's Section 3142(g). The factors that the Court will consider are the nature and circumstances of the charges against you in this case; the weight of the evidence against you; your history and characteristics, including your criminal history; whether you're on probation, parole, bond, or other court supervision for another offense at the time of the alleged offense or now; and the nature and seriousness of the danger to any person or to the community in general that would be posed by your release.

The government has the burden of proof. A finding by

the Court that no condition or combination of conditions would reasonably assure the safety of any other person or the safety of the community in general must by supported by clear and convincing evidence; while a finding by the Court that no condition or combination of conditions will reasonably assure appearance in court must be supported by the greater weight of the evidence.

A pretrial services report has been filed with the Court. It was filed on November 12th, 2025.

Mr. McKeever, did the government receive a copy?

**MR. McKEEVER:** Yes, Your Honor.

**THE COURT:** Mr. Horn, did you receive a copy?

**MR. HORN:** I did, Your Honor, and I have had an opportunity to review it with my client.

**THE COURT:** Does the report contain any incorrect or misleading information that you would like to correct?

**MR. HORN:** A couple of -- I'll call them minor. Just for the sake of accuracy, on page 3, my client's doctor, fourth line down, is spelled Reef, R-E-E-F, and it should be R-E-F-F.

**THE COURT:** He's under the care of Dr. --

**MR. HORN:** R-E-F-F.

**THE COURT:** -- Reff?

**MR. HORN:** Yes.

And then I give my client credit for raising this, under the substance abuse line, the first paragraph there, the

second line, it says he last used marijuana approximately one month ago. My client says it might be more accurate to say one week or so ago.

**THE COURT:** Okay.

**MR. HORN:** I will let the Court know, for the record, as we did discuss with Probation Agent Bucha during the call we had yesterday, my client, as the report indicates, has been diagnosed with an anxiety disorder and has not received his medication in several days. So his thought processes in that regard, in terms of the accuracy, I think is why we got the one month as opposed to the one week, Your Honor.

**THE COURT:** Okay. His medication is clonazepam?

**MR. HORN:** Yes.

**THE COURT:** That's what it says?

**THE DEFENDANT:** Yes.

**THE COURT:** Okay. With those corrections, is the report otherwise accurate to the best of your belief?

**MR. HORN:** We believe it is, Your Honor, yes.

**THE COURT:** Okay. The Court will take judicial notice of the pretrial services report and its contents.

In addition to taking judicial notice of the contents in the pretrial services report, the Court will take judicial notice of the contents of the criminal complaint since we had one in front of us and an indictment -- and the indictment.

Evidence in this matter may come from witness

testimony, documents, or proffer. A proffer is a factual statement made by the attorneys. Usually facts come from witnesses and not attorneys, but in a detention hearing, it's permissible for the parties to introduce facts by proffer. That's just a representation to the Court of what the evidence would show. The main reason is to avoid making the defendant, Mr. Jakeway, testify and possibly incriminating himself. So we proceed in a more or less informal fashion during the detention hearing.

Okay. I take it no -- there are no statutory presumptions here, is what I concluded.

**MR. McKEEVER:** No, Your Honor.

**THE COURT:** Okay. All right. Mr. McKeever, you may now proceed.

**MR. McKEEVER:** Your Honor, as you're aware from the criminal complaint in this case, there's three posts that were made on X, formerly Twitter, that came to agents' attention in this case, threats directed against ICE agents. They were made on November 4th, 2025. HSI Chicago's office received the information, and the individual who posted the post on X went under the username "@heelest," H-E-E-L-E-S-T, and the display name was "wicked ass douchebag."

Agents were able to confirm that Alexander Jakeway was the person who used that username and that display name on X.

And, your Honor, I provided three exhibits to Mr. Horn. May I approach the bench?

**THE COURT:** Yes, you may.

**MR. McKEEVER:** These posts are also included in the criminal complaint. I'm offering them here as Exhibits 1 through 3.

**THE COURT:** Okay.

**MR. McKEEVER:** Exhibit 1 is the first post that was made November 4th, 2025, from "wicked ass douchebag." It says, "Shut the fuck up geek go shoot an ice agent dead and holler at me, I'm busy."

Following that, there were two other posts starting with Exhibit 2. In Exhibit 2, "wicked ass douchebag" is replying to a video that was from a different user, "BrooklynDad_Defiant."

"BrooklynDad_Defiant" posted a video of, "ICE thugs crash their car into a U.S. citizen's car, drag her out and unlawfully detain her in front of a crowd full of witnesses." So it's a different user on X.

And "wicked ass douchebag" responds to that post stating, "We need to actually kill these fucking goons I think I really don't have experience with this and don't care about speaking publicly either."

The post following that is Exhibit 3. Replying to the same post from "BrooklynDad_Defiant," "wicked ass

douchebag" posted "Shoot on sight." Again, that's replying to a video showing ICE agents.

After agents in this case were able to identify Alexander Jakeway as the username "@heelest," they did interview him, and Mr. Jakeway did confirm that that is his username on X.

He was arrested. After he was taken to jail, he made some jail calls. He made calls to family members at home asking them to unplug the computer and devices that were in the house and asking them to not give any consent to agents requesting to look through the devices.

Because these posts were made on X on the internet, they did affect interstate and foreign commerce just by the nature of the posts.

And with that, that's the government's proffer.

**THE COURT:** I have a couple questions for you.

**MR. McKEEVER:** Sure.

**THE COURT:** So can you tell when -- you know, how close together in time these posts were made?

**MR. McKEEVER:** I don't know how close they were together, but my proffer would be that they were all on November 4th, 2025.

**THE COURT:** Okay. And can you tell from -- so you can see the number of views on this one is nine views. But can you tell from the other posts how many views there were?

**MR. McKEEVER:** No, Your Honor.

**THE COURT:** No? Okay. All right.

Mr. Horn?

**MR. HORN:** Your Honor, I think by way of proffer, my understanding is -- and I'm sure the government will correct me if I'm wrong since we're talking about the time of the arrest -- is that at the time of the arrest, there were no weapons found to carry this out of any kind, no guns, no knives, no weapons of mass or less than mass destruction, and possibly no evidence of any steps taken by Mr. Jakeway to further the alleged threats that are within Exhibits 1, 2, and 3.

The evidence would show that he has no prior criminal history. In terms of his character, he's never failed to appear in court before, that there's no evidence to show that he has any type of a violent character. And, at most, if the evidence were to show that he was a person who made these posts -- and all we have is an allegation that they came from a site and a username that may be registered to him, not that he actually made them -- that there's no evidence that he engaged in any activity or had any intent to carry out the alleged threats that were made. So in terms of actually constituting a threat to other people or the community, there's no evidence of that.

**THE COURT:** But let me ask you -- let me stop you

there for a second.

**MR. HORN:** Sure.

**THE COURT:** So if I'm -- I'm looking at these posts, and it really doesn't say he's going to carry out this threat. He's asking other people to carry out the threat. Doesn't that change the calculation?

"Go shoot an ice agent [dead] and holler at me, I'm busy."

"We need to actually kill these fucking goons I don't have experience with this."

"Shoot on sight."

Is he really saying he's going to -- I don't think your argument addresses the fact that he's soliciting other people to do this in these threats. He's really not claiming he's going to do it.

**MR. HORN:** No, he's not claiming he's going to do it. And there's also, along the lines of what the Court's referring to, no evidence that he's actually out there actually trying to find somebody else to do it. He's not charged with conspiracy with somebody else, for instance, with other individuals, to try and accomplish the end that the government would like to ascribe to him.

So we have a very -- for sake of the argument, Your Honor, assuming -- and, of course, the probable cause determination from a grand jury is still far less than the

clear and convincing standard required in this hearing, but let's assume he made those posts. There's no evidence of him carrying -- looking to carry out himself personally or that he actually went out and tried to get somebody else to do it. Nothing found at the time of the search in his house or other posts actively directed to individuals or trying to get other people involved.

At worst, I think what we've got is a person who -- frankly, like a lot of people -- and it's not an excuse -- in this day and age, who are very unhappy about some of the actions being undertaken by certain federal agents, which if you look at polling, the majority of the people in this country have some disapproval of that. It doesn't at all provide an excuse to make any threats, but in terms of the threat then becoming something from which clear and convincing evidence shows that he poses a natural, physical threat to the community or to an individual in particular -- obviously, no specific individuals are identified in any of these postings -- and I think to try and say that he poses a threat to society as a whole is just not supported. And, again, the evidence, or lack of evidence, found when he was arrested certainly backs it up.

Probation believes that's appropriate, which is why probation has recommended that he be released on an unsecured bond with the conditions that you see listed there on the last page of the report, which my client is more than happy to

adhere to.

**THE COURT:** Okay. So what about Mr.-- Mr. McKeever referenced a phone call or conversation where he advised family to unplug his computer and devices, don't give consent to agents. How does that affect your argument here about risk of flight? Let's say that. I mean, he's part of -- we're releasing him with a -- we want him to show up for court and answer these charges, and his first instinct is to try to hide the evidence in this case.

**MR. HORN:** Well, your Honor, a couple of things. First, he has a right not to allow that stuff to happen without there being an appropriate search warrant or other judicial order allowing that to occur.

Secondly, I don't think that bears on him showing up for court at all. He's showed up in every ins- -- or let me put it this way: He's never failed to appear in Court before. And he has -- does not have a passport. He lives with his grandmother, who he is caretaking for. His mother and stepfather, who are both here in Court, live just over the state line in Michigan, in Sawyer, Michigan. So his family is very close-knit and right here, and no evidence that he's traveled outside of the country other than, I believe, Canada; and that was, like, ten years ago. So there's no evidence of anything that would be -- pose a risk of flight in this particular case whatsoever.

**THE COURT:** So where would he -- can you address if he's released where he would live?

**MR. HORN:** Yes. He would live with his grandmother where he's been living in Valparaiso. You know, if the Court feels an additional layer of protection is necessary to ensure his actions, obviously, electronic monitoring is another layer the Court could impose. It's not recommended by probation, but certainly the Court could impose that.

**THE COURT:** What about access to computers, electronic devices?

**MR. HORN:** Probation has recommended his access be limited to only things that are related to his business. Again, I suppose if the Court were to find it appropriate as a means necessary to ensure -- I guess that would go more towards the safety issue -- the Court could theoretically cut off his access to that. Now, that would make it so that he can't perform business related activities or earn any income. That's always an option. I don't think that should be something that keeps him detained at this point, Your Honor. He would rather be free without access to the internet than detained still without access to the internet.

**THE COURT:** What access to the internet does he have in his house right now?

**MR. HORN:** May I have a moment?

I guess, Your Honor, the best I can tell the Court is

just regular access to the internet, you know, access to -- oh, shoot -- you know, probably Edge and Twitter and whatnot that the Court saw, and, you know, the Court, you know, could further limit that access as well, I suppose.

Whatever the Court would feel comfortable to help ensure the Court's comfort level in terms of safety and showing up for court. I don't think -- there's no evidence that he wouldn't show up for court. I think even Mr. McKeever would have to acknowledge that.

**THE COURT:** Okay. We're going to let Mr. McKeever argue since I think he restricted his presentation to the facts. You argued a little bit. It gets confusing sometimes, but let's let Mr. McKeever argue, and then we'll come back to you.

**MR. HORN:** Thank you.

**MR. McKEEVER:** Your Honor, we do contend that because of his danger to the public, detention is appropriate in this case. We would have to agree with Mr. Horn that looking at his history and characteristics, there's not a lot of evidence to show that he would be a risk of nonappearance. It's really the nature and circumstances of this offense that we would focus on in this argument.

This is a crime of violence as defined under Title 18, United States Code, Section 3156, not because it has the element of attempted use, but it's the threatened use of

physical force against another. And that's what an 875 charge is. It's a true threat to injure another person.

And looking at Exhibits 1, 2, and 3, we actually do have those true threats where it's reiterated three times. "Shoot an ICE agent dead"; "kill these fucking goons"; and "shoot on sight," and all those threats are directed towards actual ICE agents. As we know, some of those ICE agents have been located recently in the vicinity of Valparaiso where Mr. Jakeway lives.

Just focusing also on the weight of the evidence, given that Mr. Jakeway did admit that "wicked ass douchebag" was his username on X, there's strong evidence to show that he actually made these posts.

Going forward to Your Honor's question, the threat here really is engaging with other people on the internet, soliciting people to do the work for you if you can't do it yourself; and we, actually, do have evidence of engaging with another user on X, which is in Government's Exhibits 2 and 3. And that's the danger here.

The nature and circumstances of the offense are also concerning given the current political climate in the United States and certainly given the current recent events involving shootings of political figures and assaults on federal officers.

Certainly, Mr. Jakeway has no criminal history, but

considering his history and characteristics, we cannot say that he's just an immature child who didn't know better. Mr. Jakeway is a 35-year-old man who should know very well that you cannot post things like this on the internet, especially when you're engaging with other users on the internet.

For those reasons, we submit that he's a danger to the community, and he should be detained.

**THE COURT:** Okay. Mr. Horn, do you have anything to add? You don't have to.

**MR. HORN:** You know I can't resist the opportunity, Judge, but thank you.

As I was sitting here, it came back to me that the Court had asked government counsel about the timing of Exhibits 1, 2, and 3 allegedly. I believe the counsel's response was all on November 4, and I think it might cause the Court more concern had the activities depicted in Exhibits 1, 2, and 3 happened over several days or a period of time so that they were more of a continuing effort as opposed to what I'll call more spur-of-the-moment, more acting out in anger at one particular activity, because, as the Court will note, Exhibit 2 and Exhibit 3 basically show the same event.

So I think it would be fair to say the person who may have been involved in posting these things was acting out of anger, which a lot of people do. And the Court is charged with determining whether, in terms of the safety to the community,

there are conditions of release that would help assure the Court of that. And certainly given what probation has said, what we've proffered, and even what the government has proffered, the Court has ample opportunity to impose conditions that will help ensure the safety of the community, and the government has not met its burden by clear and convincing evidence to show there are none and, therefore, detention is required.

And with that, Your Honor, we request that the Court release my client on the $10,000 unsecured bail recommended by probation with terms and conditions the Court deems appropriate to help ensure both his appearance -- which, again, I don't think there's any question about -- and the safety of the community and individuals in it.

Thank you, Judge.

**THE COURT:** Okay. Thank you.

Anything else, Mr. McKeever?

**MR. McKEEVER:** No, Your Honor. Thank you.

**THE COURT:** Okay. My decision whether to -- whether or not to detain Mr. Jakeway requires me to review the Section 3142 factors. The first one is the nature and the circumstances of the charges in this case.

I understand the argument, for sure, that Mr. Horn is making that we're in political times, but I would also say that we're in fragile times and that we don't know how all of this

sort of chaos is going to end up. Posts like this are in a way lighting a match to tinder, and you don't really know how it's going to play out, but it's very dangerous. These statements are as severe and serious as you can read.

I understand it's a response to a political time in our country, and the surprising use of ICE agents in our communities, and it's creating a lot of anger among people, but it doesn't give license to say whatever you want online.

The law itself is -- it exists to define the line between permissible and impermissible speech. Under 18 U.S.C. § 875, the statute says that you cannot willfully transmit in interstate and foreign commerce a communication containing a threat to injure the person of another. And I think that's clearly what we have here.

The weight of the evidence against the defendant is very strong. I do believe that we have enough evidence, at least by probable cause, that this is the defendant who made these threats.

The history and characteristics of the defendant, he really doesn't have any criminal history, so that definitely goes in his favor. He was not on parole, probation, bond, or other court supervision at the time of another offense or now.

The nature and seriousness of the danger to any person or to the community in general that would be posed by release, that's a hard one to measure. The probation

department is suggesting that he be released really without any kind of limitation on his movement other than restricted to the Northern District of Indiana, but you really -- you can make these threats from anywhere. They can just happen on your phone. You just type them out.

There's no presumption in favor of detention. So I don't believe there's a flight risk here, but I do believe that, based on the evidence, no condition or combination of conditions will reasonably assure the safety of other persons in the community, and the government has met its burden by clear and convincing evidence. So I'm going to detain you here.

It's a tough call for me, but I think, given the nature of these threats, the repeated nature of the threats, and also the conversation in which Mr. Jakeway tried to hide what happened here, instead of fully cooperating and being open to the investigation, I think that also affects my decision.

So that will be the order of the Court, and that will conclude our hearing. Thank you.

(End of requested electronic transcript proceedings.)

CERTIFICATE OF THE REPORTER

I certify that the foregoing transcript is a true and correct record of the proceedings digitally recorded, as taken down by me stenographically from the FTR electronic media, to the best of my ability.

Tamara L. Vandervort DATE: 11/19/2025

TAMARA L. VANDERVORT
Federal Certified Realtime Reporter
United States District Court
Northern District of Indiana
South Bend Division